IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GARY WAYNE YOUNGBLOOD,   )
#263 709,   )
      Plaintiff,   )
   )
v.   )   CIVIL ACTION NO.: 2:12-CV-35-WKW
   )         [WO]
CERT. OFFICER MCCOVERY, *et al.*,   )
   )
      Defendants.   )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Plaintiff, a state inmate, challenges the constitutionality of actions taken against him on June 16, 2010, at the Easterling Correctional Facility in Clio, Alabama. On this date, numerous inmates, including Plaintiff, refused orders to leave the recreational yard. The Correctional Emergency Response Team ("CERT") responded to the disturbance and placed the inmate participants in "nylon zip ties." Plaintiff brings this action complaining that he was subjected to excessive force in the application of the zip ties, that Defendants exhibited deliberate indifference to his safety by using the zip ties, and that Defendants were deliberately indifferent to a serious wrist injury caused by the zip ties. *Doc. No. 12*. Named as defendants in this case are CERT Officer Larry McCovery, Warden Louis Boyd, and Warden Kenneth Sconyers. Plaintiff seeks damages.[1] *Doc. No. 12*.

Defendants filed an answer, special report, and supporting evidentiary material in

---

[1]In accordance with the prior orders of the court, this case is proceeding on the amended complaint filed by Plaintiff on February 24, 2012. *See Doc. Nos. 9, 12*.

response to the allegations contained in the complaint. The court then informed Plaintiff that Defendants' special report, may, at any time, be treated as a motion for summary judgment, and explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. Plaintiff filed responses to the special report filed by Defendants. This case is now pending on Defendants' motion for summary judgment. Upon consideration of the motion, Plaintiff's opposition to the motion, and the supporting and opposing evidentiary materials, the court concludes that the motion for summary judgment filed by Defendants is due to be granted.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id.* at 322-324.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required [by citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. Consequently, to survive Defendants' properly supported motions for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies]

3

is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (internal citations omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs likewise cannot create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond his own conclusory allegations challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of

summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986) (internal citations omitted).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell v. Valley Forge Dental*

5

*Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment.

## II. DISCUSSION

The incident/duty officer report prepared shortly after the event about which Plaintiff complains reflects that on June 16, 2010, at approximately 7:25 p.m., a correctional officer observed a large group of inmates walking together on the sidewalk of the recreational yard at Easterling. The officer notified the night shift commander of the incident, and he reported to the yard. The guards questioned the inmates about being "grouped up." Several inmates voiced their desire to speak to the warden regarding various complaints they had about institutional life and indicated they were not "locking down." The night shift commander ordered the yard and gym closed. Inmates who were not a part of the large group began returning to their dorms. The large group of inmates, however, remained on the yard. The

night shift commander notified Warden Sconyers about the ongoing incident. Warden Sconyers ordered all dormitories to be put on lock down with no movement in or out. An inmate in the group began waving his arms and yelling for other inmates to join the group. As several correctional officers monitored the situation, the night shift commander ordered all the inmates to report to their assigned dorms. None of the inmates in the group complied. *Doc. No. 21, Exh. 2 - Incident Report/Duty Officer Report.*

At approximately 8:05 p.m., Warden Boyd and Warden Sconyers entered Easterling. Thereafter, several other senior administration officials arrived at the facility. At approximately 10:55 p.m. the South Central CERT team entered the facility. Within five minutes of the CERT teams's arrival, Warden Boyd announced over the PA system that all inmates who did not wish to be involved in the protest were to report to the gym porch area and lie face down on the ground with their hands on their heads. The CERT team entered the population at 11:01 p.m. and approached the gym porch area. All the inmates remaining on the yard complied with Warden Boyd's instructions. The CERT team members searched the inmates, handcuffed them with flex cuffs, and took them to the gym for processing into segregation or the restricted privilege dorm. *Doc. No. 21, Exh. 2 - Incident Report/Duty Officer Report; Exhs. 1 & 2 - Sconyers and McCovery Affidavits.*

A. *Absolute Immunity*

Plaintiff lodges his complaint against Defendants in their official capacities. Defendants, however are entitled to absolute immunity from monetary damages when sued in their official capacity. Official capacity lawsuits are "in all respects other than name, ...

treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900,  908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44,[59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).  In light of the foregoing, Defendants are entitled to sovereign immunity under the Eleventh Amendment for  claims seeking monetary damages from them in their official capacity regarding the alleged violations of Plaintiff' constitutional rights. *Id*.; *Jackson v. Georgia Dept. of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

*B. Individual Capacity Claims*

   *i.  Excessive Force Claim*

   Plaintiff alleges that he was subjected to excessive physical force when he was restrained with nylon zip ties for refusing to leave the recreation yard as directed. *Doc. No. 12* at 2-3.  Defendants argue that they are entitled to summary judgment on this claim because the need existed for applying some force due to the large number of inmates gathered in protest, who were chanting and forming weapons from wooden soccer goals, as

well as the inmates' failure to comply with prison officials' orders to return to their dorms. *Doc. No. 21, Exhs. 1, 2*. Defendants further argue that the CERT team members had to apply force to maintain discipline, avoid a potentially dangerous and riotous situation, and divert potential harm from Plaintiff, other inmates, and/or prison personnel. *Id*. Finally, Defendants contend they acted in good faith in an effort to maintain institutional safety and order and prevent harm to inmates and prison personnel, and used only that amount of force necessary to place inmates in restraints to accomplish those goals. *Id*.

In response to Defendants' arguments, Plaintiff contends that he was subjected to immediate pain upon being placed in the flex cuffs while lying face down on the ground. He informed Defendants that the cuffs were too tight and caused him pain as he was assisted to a standing position, and before he was escorted to the gym, but he was told to "shut the f__ up!" *Doc. No. 39* at 5 ("[Defendants Boyd and Sconyers] were directly in front of Plaintiff as zip tie was applied with excessive force. Both heard plaintiff expressing to McCovery that strap was way too tight and hurting."). Plaintiff argues that Defendant McCovery placed the "nylon straps" on his wrist "with such excessive force ... caus[ing] immediate un-necessary [sic]and wanton infliction of pain and suffering." *Doc. No. 25* at 1.Plaintiff maintains that the officer was "totally indifferent to the danger to plaintiff's wrist due to the excessive force used in applying [the] nylon strap," despite his telling the guard to place another strap on his wrists correctly, *Id*.

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell*

9

*v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted). Regarding the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* (internal quotations omitted). Not every malevolent touch by a prison official amounts to a deprivation of constitutional rights. *Id.* at 9. However, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id.* at 4. In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Court held that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 38. The *Wilkins* Court clarified that it is the nature of the force "that ultimately counts" and provides the "core judicial inquiry" in an excessive force case. *Id.* at 38-39. In particular, courts must consider "whether [the force] was nontrivial and 'was applied . . . maliciously and sadistically to cause harm." *Id.* at 39 (quoting *Hudson* 503 U.S. at 7).

To demonstrate the subjective component, Plaintiff must prove that Defendant McCovery used force against him "maliciously and sadistically for the very purpose of causing harm" rather than in a good faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out

"maliciously and sadistically" to cause harm: (1) "the need for application of force;" (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them." *Id.* at 321. In extending *Whitley* to all cases involving allegations of force, the Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Id.* at 6 (citations omitted).

Plaintiff has alleged, and the facts produced by Defendants corroborate, that there was a prison disturbance involving over 100 inmates on June 16, 2010, on Easterling's recreational yard in which Plaintiff was a participant. These facts demonstrate an undisputed need for the application of force based on a threat reasonably perceived by prison officials who had a legitimate concern in restoring order and discipline to the facility, which included placing Plaintiff and his fellow inmates in flex cuffs.[3] Thus, the first and fourth *Whitley*

---

[3]Defendant Sconyers states that flex cuffs were used to secure inmates due to the limited supply of traditional steel handcuffs available. *Doc. No. 21, Exh. 1.* Plaintiff argues that Defendants are trying to mislead the court by referring to the restraint devices as flex cuffs rather then "conceding to the use of nylon straps" which Plaintiff claims should not have been used because of their potential to cause injury. *Doc. No. 25* at 3. For ease of reference and for purposes of this Recommendation, the court will use the same term reflected in the Department of Corrections' incident report, *i.e.*, flex cuffs.

factors do not suggest that Defendants acted maliciously and sadistically for the purpose of causing harm. Taking as true Plaintiff's assertion that his flex cuffs were applied more tightly than necessary, under the undisputedly exigent circumstances facing the CERT team members as they attempted to secure and restrain all the inmate participants expeditiously, there was clearly a relationship between the need and amount of force used. "The infliction of pain in the course of a prison security measure ... does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable and, hence, unnecessary in the strict sense." *Whitley*, 475 U.S. at 319. Finally, although Plaintiff complains that the flex cuffs caused him serious injury, there is no evidence of this other than his own self-serving declarations; Plaintiff did not require medical treatment upon removal of the restraints or voice a complaint regarding wrist pain to medical personnel until almost a year after the incident occurred. *See Doc. No. 39, Attachment* at 10.

The court concludes that Plaintiff has failed to demonstrate that Defendant McCovery placed him in flex cuffs to cause him injury, as opposed to McCovery's using that amount of force necessary to secure Plaintiff, along with over 100 other inmates, quickly and efficiently in the face of a potentially dangerous and volatile situation. Nor has Plaintiff produced any evidence demonstrating that application of the flex cuffs and/or the officers' failure to loosen them immediately upon application was done maliciously or sadistically or for the very purpose of causing him harm, rather than for the purpose of quickly securing all inmates and reestablishing order and security at the prison. In the midst of a dangerous

situation involving an agitated, protesting group of over 100 inmates outside their cells, it was reasonable for prison officials to use plastic restraints, and it was also reasonable for prison officials to restore order and to secure all the inmates before making adjustments to the restraints on those inmates complaining about the tightness of the restraints.[4]

The facts alleged by Plaintiff and the reasonable inferences that flow from them do not reflect that Defendant McCovery subjected Plaintiff to tight flex cuffs capriciously or that his actions amounted to a wanton infliction of harm. Nothing in the record suggests that this officer had the requisite intent to cause Plaintiff harm or that application of the flex cuffs under the circumstances caused more than minimal injury in the form of wrist pain. While Plaintiff asserts that he "submitted [a] medical request to officers on duty per S.O.P. ["standard operating procedure] but never received visit to HCU while segregated," *Doc. No. 39* at 6, he fails to describe the nature of this medical request or specify the date on which the request was submitted.[5] Plaintiff also argues that he was subsequently evaluated for carpal tunnel syndrome in March 2012 which, he claims, reflects evidence of Defendant McCovery's state of mind which was "intent to punish." *Doc. No. 39* at 1. Plaintiff, however, neither describes nor presents evidence of any physical injury which required immediate

---

[4]The undisputed evidence reflects that after all the inmates had been secured and escorted to the gym, Warden Sconyers observed officers remove and re-apply flex cuffs to inmates who complained that they were too tight, and that Officer McCovery himself began adjusting the flex cuffs for inmates complaining of discomfort. *Doc. No. 21, Exhs. 1, 2*.

[5]Plaintiff was disciplined for participating in the June 10 disturbance and was sanctioned with, among other things, forty-five days in disciplinary segregation. *Doc. No. 21, Exh. 2 at Disciplinary Report*.

medical treatment following the incident, nor does this argument create a genuine dispute of fact, as he has not demonstrated that Defendant McCovery's conduct in using some force to apply the flex cuffs under the circumstances was not justified by "a good-faith effort to maintain or restore discipline," but instead applied "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6

Although a serious injury is not required to state an Eighth Amendment violation, such a violation does require proof that prison officials "maliciously and sadistically use[d] force to cause harm." *Hudson*, 503 U.S. at 9. "[I]In evaluating the challenged conduct of prison officials, a court must keep in mind the paramount concerns of maintaining order and discipline in an often dangerous and unruly environment."  *Ort v. White*, 813 F.2d 318, 322 (11th Cir. 1987).  "[I]f force was applied in a good faith effort to maintain discipline, courts should give great deference to acts taken by prison officials in applying prophylactic or preventative measures intended 'to reduce the incidence of riots and other breaches of prison discipline.'" *McBride v. Rivers*, 170 Fed.Appx. 648, 656 (11th Cir. 2006) (quoting *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991)).  While this deference "'does not insulate from review actions taken in bad faith or for no legitimate purpose, it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.'" *Ort*, 813 F.2d at 322 (quoting *Whitley*, 475 U.S. at 322).  Where the only question concerns the reasonableness of the force used by a prison official, the defendant will ordinarily be entitled to judgment as a matter of law. *See  Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) (explaining that "force does not violate the Eighth

Amendment merely because it is unreasonable or unnecessary");  *McBride*, 170 Fed.Appx. at 657 (although correctional officers could arguably have used less force after subduing inmate, inmate "failed to produce evidence showing that these measures were taken 'maliciously and sadistically for the very purpose of causing harm.'") (citations omitted).

Viewing all reasonable inferences in favor of Plaintiff, the court concludes that the actions of Defendant McCovery reflect that he took reasonable steps to quell a prison disturbance and his actions in applying the flex cuffs the Plaintiff were not undertaken maliciously and sadistically for the very purpose of causing harm. Because Plaintiff has presented no evidence reflecting that Defendant McCovery's conduct amounted to the  type of malicious or sadistic behavior required to establish an Eighth Amendment violation, Defendants' motion for  summary judgment on this claim is due to be granted.

*ii.  Deliberate Indifference*

The court understands Plaintiff's allegations to assert a deliberate indifference claim against Defendants on the theory that the restraint device used to secure him on the evening of June 16, 2010, is inherently dangerous and, therefore, Defendants knew of an excessive risk to inmate health and safety and nonetheless used the device to restrain him and cause him unnecessary pain. Defendants argue that they are entitled to summary judgment because Plaintiff has failed to meet his burden of establishing that they exhibited deliberate indifference to his health or safety. *Doc. No. 21*. Defendant McCovery states that, after all the participating inmates were handcuffed and escorted to the gym for processing into segregation or the restricted privileges dorm, he, along with other CERT team members,

began adjusting the flex cuffs on those inmates complaining that they were uncomfortable. *Id. at Exhs. 2, 3.* Defendant Sconyers observed the CERT officers re-applying restraints and denies awareness of any injury to Plaintiff's wrists. *Id. at Exh. 1.* As inmates were processed in to segregation or the restricted privileges dorm, their cuffs were removed. *Id.*

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" that is "totally without penological justification." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (internal quotations and citations omitted). In the Eighth Amendment context there is no "static test" for determining which conditions violate the Constitution. *See Rhodes v. Chapman,* 452 U.S. 337, 346 (1981). Rather, whether a violation exists requires a fact intensive determination of what conditions exist and whether objectively and subjectively the conditions offend the Constitution by amounting to seriously sufficient deprivations to which officials were deliberately indifferent. *See, e.g. Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Wilson v. Seiter,* 501 U.S. 294, 298 (1991).

Regarding the objective component, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala*., 268 F.3d 1014, 1028-1029 (2001) (internal citations omitted). On the subjective component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . .The Eighth Amendment does not outlaw cruel

and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ...  [A]n official's

failure to alleviate a significant risk that he should have perceived but did not, while no cause

for commendation, cannot under our cases be condemned as the infliction of punishment."

*Farmer*, 511 U.S. at 837-838; *Campbell*, 169 F.3d at 1364 (citing *Farmer*, 511 U.S. at 838)

("Proof that the defendant should have perceived the risk, but did not, is insufficient.");

*Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must

involve more than ordinary lack of due care for the prisoner's interests or safety... It is

obduracy and wantonness, not inadvertence or error in good faith, that characterize the

conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct

occurs in connection with establishing conditions of confinement, supplying medical needs,

or restoring official control over a tumultuous cellblock."  *Whitley*, 475 U.S. at 319.

> To be deliberately indifferent, Defendants must have been "subjectively aware
> of the substantial risk of serious harm in order to have had a '"sufficiently
> culpable state of mind."'"  *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80;
> *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271
> (1991). . . Even assuming the existence of a serious risk of harm and legal
> causation, the prison official must be aware of specific facts from which an
> inference could be drawn that a substantial risk of serious harm exists - and the
> prison official must also "draw that inference."  *Farmer*, 511 U.S. at 837, 114
> S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  "The known risk of injury must

be a strong likelihood, rather than a mere possibility before [the responsible official's] failure

to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th

Cir. 1990) (citations and internal quotations omitted).

The facts as alleged by Plaintiff fail to establish that the condition about which he

17

complains unconstitutionally exposed him to a substantial risk of serious harm, which must be "extreme" to be actionable. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Further, Plaintiff's request to Defendants to adjust his flex cuffs was apparently made at the height of prison officials' efforts to secure all involved inmates and there is no evidence that Defendants knew that the inmates' restraints, including Plaintiff's, would not subsequently be adjusted as necessary. Plaintiff attempts to create a dispute of material fact by alleging that Defendants subjected him to a substantial risk of serious harm of which they were subjectively aware because, he claims, the flex cuffs are inherently dangerous as they are typically used in the heating and air conditioning industry to secure non-metallic air ducts, and because they carry a warning label indicating their use can cause injury. S*ee Doc. No. 25* at 2-3.  The record, however, is devoid of evidence that Defendants had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff or any other inmate regarding the flex cuffs, and that Defendants drew this inference and thereafter ignored this risk. *See Carter*, 352 F.3d at 1349-50 ("a generalized awareness of risk ... does not satisfy the subjective awareness requirement."). Even if Defendants' decision to use the flex cuffs was negligent, mere negligence does not satisfy the deliberate indifference standard under the Eighth Amendment. *Id.* at 1350. The Constitution is not implicated by negligent acts of an official causing unintended loss of or injury to life, liberty or property. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *see also Whitley*, 475 U.S. at 319 (holding that a violation of the Eighth Amendment must involve "more than an ordinary lack of due care for the prisoner's .... safety").

Based on the record before it, the court finds that Defendants' use of plastic flex cuffs to restrain plaintiff, along with over 100 other inmates, during a serious prison disturbance does not rise to the level of a constitutional violation. While undoubtedly unpleasant, the condition about which Plaintiff complains, under the circumstances, does not rise to the level of deliberate indifference by Defendants sufficient to establish a constitutional violation, and summary judgment is due to be granted in their favor on this claim. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

*iii. Medical Treatment*

Plaintiff asserts an Eighth Amendment violation against Defendants, claiming they were deliberately indifferent to his serious medical needs. He contends in his opposition that "[a]fter being assisted up off the ground by McCovery and in the process of being escorted into the gym," he informed Defendants the "nylon straps were pulled so tight [] they were causing pain."[6] *Doc. No. 25* at 2; *see also Doc. No. 39* at 5. He further states that after his flex cuffs were removed he "requested medical attention from all defendants and was denied ..., [and he] did not receive a body per A.D.O.C. rules." *Doc. No. 25* at 3 (emphasis in original). Plaintiff asserts that a physician subsequently diagnosed him with carpal tunnel syndrome and nerve damage in his left wrist, and claims that this was due to application of the flex cuffs. *Id.* at 4.

---

[6]In his complaint, Plaintiff indicates that after all inmates had been secured in the gym and correctional officers had finished questioning them about their gang affiliations, some inmates were able to have their flex cuffs readjusted, but he claims he was told to "shut the f__ up." *Doc. No. 12* at 3. However, Plaintiff fails to identify the individual who made the remark or relate the actual statement or comment he made which prompted this response.

To prevail in a suit based on an Eighth Amendment claim concerning medical attention, an inmate must show at a minimum that correctional or medical officials have acted with deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). "Because society does not expect that inmates will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson*, 503 U.S. at 9 (citing *Estelle* 429 U.S. at 103-104). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002). A corrections or medical official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Under this standard, a corrections or medical official does not act with indifference by providing medical care that is different from that which an inmate desires. *See Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985).

A claim about a failure to provide immediate or emergency medical attention must involve medical "needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Hill*, 40 F.3d at. 1187 (footnote omitted). "In contrast,

delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation." *Id.*

Plaintiff's opposition, including the affidavits of inmates that he submits in support thereof, indicates that he complained of wrist pain at the time of the incident and upon removal of the flex cuffs, and requested medical attention from Defendants for this condition, which they denied. *Doc. No. 25*. Plaintiff asserts that he was assigned to a top bunk with a "severe wrist injury" while housed in segregation, and that the injury was aggravated when he was handcuffed from behind for shower calls (*Doc. No. 39* at 6). However, plaintiff provides no description of the injury or in what way it was severe, nor does he indicate that he requested or received any immediate treatment for it. Plaintiff merely states that he submitted a sick call request, the reason for which and date of which he does not identify, while he was housed in segregation, and "never received [a] visit to HCU." Thereafter, the evidence reflects that Plaintiff did not seek medical care or treatment for wrist pain or injury until almost a year after the incident occurred.[7] The evidence further shows that on April 28,

---

[7]Plaintiff submitted copies of his medical records in support of his opposition. *See Doc. No. 39 at Attachment*. These reflect that medical personnel scheduled Plaintiff for a doctor's appointment on May 13, 2011, for his complaint of a "bump/knot" on his left wrist which he stated occurred one year before and resulted from "nylon straps used on his wrist." *Doc. No. 39, Attachment* at 2-3. A physician examined Plaintiff on May 18, 2011, and directed that he be provided with a wrist brace for ninety days, given a bottom bunk profile, and do no heavy lifting or pulling for six weeks. *Id.* at 1, 4. Plaintiff next complained of wrist pain on January 30, 2012. *Id.* at 10. His sick call request slip reflects that he attributed the knot on his left wrist to the nylon straps applied in June 2010; plaintiff stated that he had seen the doctor in May 2011 who told him his wrist looked normal and failed to provide him with any treatment other than a wrist brace and a special needs profile. *Id.* Plaintiff's medical records reflect that the first reference to carpal tunnel syndrome was made during a medical examination on February 22, 2012. *Id.* at 11. On March 11, 2012, Plaintiff was approved for a consultation request which listed a presumed diagnosis of carpal tunnel syndrome. *Id.* at 7.

2011, Plaintiff submitted an inmate request slip to Warden Boyd requesting that he not be charged for wanting to see a doctor about a bump on his wrist which he attributed to application of the flex cuffs and which he stated was only "beginning to hurt." *Doc. No. 25, Exh. 1*.

Here, the record is devoid of evidence that the condition of Plaintiff's wrist when his flex cuffs were removed amounted to a serious injury requiring immediate medical attention. Defendants deny being aware of any damage or injury to Plaintiff's wrists. *Doc. No. 21, Exhs. 1, 2*. Further, there is no evidence that when his flex cuffs were removed Plaintiff had any visible damage to his wrists, or that the condition of his wrists was obviously serious and required immediate medical attention. Plaintiff's evidence that his wrist only began to hurt ten months after the incident occurred undercuts his allegation that Defendants acted with deliberate indifference to a serious injury.

To demonstrate that Defendants acted with a "sufficiently culpable state of mind" to survive summary judgment, Plaintiff must put forth evidence to establish that they knew of a serious risk to his health and consciously disregarded that risk. Here, no evidence has been presented which demonstrates that Plaintiff had an "objectively serious medical need" which required immediate emergency attention from medical personnel which Defendants knew of and disregarded. *Farmer*, 511 U.S. at 837. The fact that an inmate feels that he did not get the level of medical attention that he preferred or desired does not, as a matter of law, constitute deliberate indifference. "[T]he essential test is one of medical necessity and not one simply of desirability." *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir.1981) (citation

omitted).  Even if Defendants' conduct can be described as negligent, gross negligence, without more, does not constitute deliberate indifference.  *Estelle*, 429 U.S. at 106. Thus, while Plaintiff may not have received the treatment he desired when he wanted it, there is no evidence that Defendants knew that Plaintiff faced a substantial risk of serious bodily harm, and disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847. Accordingly, the court concludes that Defendants are entitled to summary judgement on Plaintiff's Eighth Amendment claim regarding a denial of adequate medical care.

### iv. Failure to Follow Prison Regulations

To the extent that Plaintiff challenges Defendants' failure to provide him with a body chart following the prison disturbance as a violation of prison administrative regulations directing that body charts be performed on inmates following use of force incidents, such claim entitles him to no relief in this matter.  Not every deviation from an agency's rules violates the Constitution. *Garrett v. Mathews*, 625 F.2d 658, 660 (5th Cir. 1980), *citing United States v. Caceres*, 440 U.S. 741(1979);[8] *see also Harris v. Birmingham Board of Education*, 817 F.2d 1525, 1528 (11th Cir. 1987). Defendants are, therefore, entitled to summary judgment on this claim.

## III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion for summary judgment (*Doc. No. 21*) be GRANTED;

---

[8]In *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered before October 1, 1981. *Id*. at 1207.

2.   This case be DISMISSED with prejudice;

3.   Costs be taxed against Plaintiff.

It is further

ORDERED that on or before **November 13, 2014**, the parties may file an objection to the Recommendation.  Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised  this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 30th day of October, 2014.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE